UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

KIEL GREEN and
MELISSA GREEN                                                                                    PLAINTIFFS

V.                                      CASE NO. 5:24-CV-5040

ATWOOD DISTRIBUTING, L.P.                                                                DEFENDANT

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Atwood Distributing, L.P.'s Motion for Summary Judgment (Doc. 40) and Memorandum Brief in Support (Doc. 41). Plaintiffs Kiel and Melissa Green have Responded in Opposition, *see* Docs. 51 & 52, and Atwood has Replied (Doc. 53). The Greens brought this suit alleging that Atwood's negligence resulted in Mr. Green sustaining injuries while at one of Atwood's stores. Mrs. Green also seeks compensation for loss of consortium. For the reasons stated herein, Atwood's Motion for Summary Judgment is **DENIED**.

**I.   BACKGROUND[1]**

The injury at the center of this suit occurred on September 9, 2023, when Kiel Green and his son went to an Atwoods store to purchase goat feed. At the time, the store was undergoing a "reset," a massive reorganization or remodel of the store. According to Mr. Green, the store was "torn to heck" and looked "almost like a construction zone" with "stuff everywhere," including "boxes all over the floors" and "pallets everywhere." (Doc. 51-3, p. 2).

---

[1] Atwood did not file a Statement of Undisputed Facts as required by Local Rule 56.1(a). As this thwarts the Greens' ability to make specific factual disputes, the Court entered a text only order (Doc. 50) allowing the Greens to preserve their denial of facts by general denial alone.

1

Mr. Green and his son grabbed the goat feed and proceeded toward the checkout area. *Id.* at p. 5. As they headed towards the front of the store, Mr. Green decided he wanted to get some beef jerky. *Id.* Atwoods sells what is, apparently, particularly good beef jerky out of an old-fashioned, wooden wagon that is open on the top. *Id.* at pp. 6–7; Doc. 51-19, p. 2. Due to the reset, there was a pallet of metal shelving placed near the jerky wagon. Below is a screenshot from Doc. 40-7 of the shelving.



According to Atwoods employees, the axels of the wheels of the jerky wagon were positioned on the very left edge of the photo, and both the shelving and the wagon were pushed up against a pallet of dog food (the black and green bags to the left of the shelving). (Doc. 51-5, p. 16; Doc. 51-2, p. 36).

After selecting his jerky, Mr. Green struck his elbow on the pallet of shelving. It is unclear if he backed into the shelving, turned into it, or caught his arm on it as he walked past. Nevertheless, according to the Greens, it caused a Vasovagal syncope response and Mr. Green passed out, sustaining a head injury. *See* Doc. 51, pp. 11, 25.

Atwood conducted an investigation; however, there are no particularly clear photos or videos of the incident or the scene. The one video in evidence that captured the incident rather fuzzily shows Mr. Green entering a space between what looks to be the metal shelving and the jerky wagon, selecting the jerky, then walking out of the space, at which time he lifts his elbow and turns his head. *See* Doc. 44, ATWOOD_000158 (CLOSER VIEW). He continues to walk for a few seconds before falling straight back. *Id.*

On February 13, 2024, the Greens filed suit bringing claims for negligence and loss of consortium. Atwood filed this Motion on March 10, 2025.

## II.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Court must review the facts in the light most favorable to the opposing party and give that party the benefit of any inferences that logically can be drawn from those facts. *Canada v. Union Elec. Co.*, 135 F.3d 1211, 1212–13 (8th Cir. 1997). The moving party bears the burden of proving the absence of a genuine dispute of material fact and that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Nat'l Bank of Commerce of El Dorado v. Dow Chem. Co.*, 165 F.3d 602 (8th Cir. 1999).

Once the moving party has met its burden, the non-moving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(c)). "[T]he mere existence of a scintilla of evidence in support of the [moving party's] position will be insufficient" to survive summary

3

judgment. *Anderson v. Durham D&M, L.L.C.*, 606 F.3d 513, 518 (8th Cir. 2010) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Rather, for there to be a genuine issue of material fact that would preclude summary judgment, the non-moving party must produce evidence "such that a reasonable jury could return a verdict for the nonmoving party." *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir. 1994) (quoting *Liberty Lobby*, 477 U.S. at 248).

## III. DISCUSSION

Atwood moves for summary judgment on the argument that it had no duty to Mr. Green as a business invitee because the hazard was an "open and obvious" danger and that, without the negligence claim, Mrs. Green's loss-of-consortium claim must fail as well. The Greens make three arguments in response: that the danger was not open and obvious, and even if it was, an exception applies; that Atwood's failure to comply with a local ordinance constitutes prima facie negligence; and that the Motion should be denied as a sanction for Atwood's spoliation of critical evidence. Atwood replies, arguing that the hazard was open and obvious, the exception does not apply, this particular area of the store was not subject to the ordinance's aisle-width requirements, and sanctions for spoliation would be improper.

### A. Duty to Business Invitees

Generally, "a property owner has a duty to exercise ordinary care to maintain the premises in a reasonably safe condition for the benefit of invitees." *Dollar Gen. Corp. v. Elder*, 2020 Ark. 208, at *7 (2020) (citation omitted). The owner's "duty to warn an invitee of a dangerous condition applies only to defects or conditions such as hidden dangers, traps, snares, pitfalls and the like, in that they are known to the owner but not to the invitee

4

and would not be observed by the latter in the exercise of ordinary care." *Id.* (citation omitted). However, where a "danger is known or obvious," the landowner has no duty to an invitee. *Id.* (citation omitted). This is known as the "open and obvious" exception. A danger is "known" not only when there is "knowledge of the existence of the condition or activity itself, but also appreciation of the danger it involves." *Van DeVeer v. RTJ, Inc.*, 81 Ark. App. 379, 386 (2003) (quoting Restatement (Second) of Torts § 343A). And it is "obvious" where "both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising ordinary perception, intelligence, and judgment." *Id.* (quoting Restatement (Second) of Torts § 343A). "Thus the condition or activity must not only be known to exist, but it must also be recognized that it is dangerous, and the probability and gravity of the threatened harm must be appreciated." *Id.* (citing Restatement (Second) of Torts § 343A).

The parties do not dispute that Mr. Green was a business invitee; rather they dispute whether the hazard was "open and obvious." First, Atwood argues that the general size and nature of the shelving was such that a reasonable person would easily have seen it and avoided putting their body in contact with it. (Doc. 41, p. 14). Atwood also cites the Greens' responses to request for admission that admit Mr. Green indeed saw the shelving as he approached the jerky wagon. (Doc. 41, pp. 9–10 (citing Doc. 40-3, p. 2 (admitting that Mr. Green "saw the pallet of metal shelving when [he] approached the beef jerky display" and that it "was not covered, hidden, or obscured in any way"))). In turn, the Greens point to Mr. Green's deposition, where he claimed to not "[s]pecifically" remember "a pallet of shelving," nor could he recall any details about the pallet of shelving. (Doc. 51, p. 12 (citing Doc. 51-3, p. 7–8)). Importantly, the Greens note that the metal shelving had

5

"a series of sharp points running up along the edges of the pallet." *Id.* (citing Doc. 40- 7 (picture showing approximately thirty small metal prongs protruding from one of the corners of the shelving into the space between the shelving and the jerky wagon)).

It is unclear exactly how Mr. Green injured his elbow on the shelving—whether he backed into the shelving, turned into it, or caught his arm on it as he walked past. To the extent the hazard here was simply the block of shelves and the risk was bumping into it, the Court agrees with Atwood that such a condition and risk would be apparent to and recognized by a reasonable man. *See Van DeVeer*, 81 Ark. App. at 386. However, viewing the evidence in the light most favorable to Mr. Green, a reasonable juror could find that Mr. Green did not simply bump into the shelving unit, but that he "caught" his arm on the protruding metal prongs. This is supported by Mrs. Green's Customer Incident Report that states Mr. Green "[w]as walking" and "caught his arm on a display" and lists the "nature of injury" as a "cut," (Docs. 40-2 & 51-15), and the video of the incident that could reasonably be viewed as Mr. Green catching his arm on the corner of the shelving with the prongs as he walked past it, (Doc. 44, ATWOOD_000158 (CLOSER VIEW), at 0:14 (showing Mr. Green walking alongside the shelving, pulling up his elbow as he passes the corner, and looking back at either the shelving or his elbow)). If Mr. Green was injured in this manner, the question becomes whether the protruding metal prongs were an open and obvious danger.

In *Woodruff v. Western Sizzlin of Russellville, Inc.*, 2020 Ark. App. 396 (2020), the Arkansas Court of Appeals found there was a genuine issue of material fact whether a hazard was open and obvious because it was unclear if the plaintiff recognized the danger. There, the plaintiff slipped and fell at the defendant's restaurant as she was

returning to her seat from the salad bar. *Id.* at 2. Notably, the plaintiff had "noticed the carpet was wet when she walked to the salad bar before she fell." *Id.* at 9. During her return from the salad bar following the same route, the plaintiff slipped and fell in a slick substance, which appeared to her, after the fact, to be melted ice cream and/or hamburger. *Id.* at 2. The plaintiff testified that despite having seen some wet carpet before falling, "she did not see standing water or notice any ice cream, hamburger, or other potentially slick substance." *Id.* at 10. The court there held the danger was not open and obvious, reasoning that "[k]nowledge that the carpet was wet is not the equivalent of knowing melted ice cream and hamburger are on the floor." *Id.*

In contrast, cases where courts have found an open and obvious danger on summary judgment often have much clearer evidence of the plaintiff's recognition of the danger. For example, in *Drummond v. Lowe's Home Centers, LLC*, 2023 WL 8355898 (W.D. Ark. Dec. 1, 2023), this Court found that the puddle in which the plaintiff slipped and fell was an open and obvious danger because it was "undisputed that [the plaintiff] saw the puddle and attempted to step around it, showing her knowledge and appreciation of the risk." *Id.* at *2. Similarly, in *Hope Medical Park Hospital v. Varner*, 2019 Ark. App. 82 (2019), an Arkansas court held that the tree roots over which the plaintiff tripped were an open and obvious danger because the plaintiff had worked at the location for fifteen years, "had walked across the median with its tree roots sticking up many times, including fifteen minutes before she fell," and the plaintiff testified she saw the tree roots on the day of her fall but "thought she could avoid tripping over the tree roots if she was being careful and paying attention." *Id.* at 3. According to the court in *Hope Medical*, the plaintiff's "testimony show[ed] that she appreciated the danger of the situation," just like in *Drummond*. *Id.* at

7

6. Likewise, in *Lackey v. Mays*, 103 Ark. App. 70 (2008), an Arkansas court affirmed that the defendant had no duty to the plaintiff who had been t-boned while driving through the defendant's parking lot under the open and obvious danger exception because the plaintiff had stated that he had "slowed down and looked left and right twice" because, as a police officer, "he knew that wrecks had occurred at the existing intersections," and he had even responded to some. *Id.* at 76. Therefore, the court held that the plaintiff "knew and appreciated the risks of the new intersections." *Id.*

The case at bar is distinct from *Drummond*, *Hope Medical*, and *Lackey*, and is more in keeping with *Woodruff*. While Mr. Green may have—and a reasonable person in his condition should have—seen the stack of shelves, knowledge of the existence of the shelving "is not the equivalent of knowing" sharp metal prongs protruded from the shelving. *Woodruff*, 2020 Ark. App. 396, at 10. Atwood has not pointed to any evidence that Mr. Green knew of the metal prongs and the danger they posed. Nor has Atwood persuasively argued that such a condition and risk would be so obvious to a reasonable person that the Court should make such a finding as a matter of law. Thus, the Court finds that there is a genuine issue of material fact whether the small metal prongs protruding from the shelving were an open and obvious danger, so it cannot say as a matter of law whether Atwood owed a duty to Mr. Green.[2]

---

[2] Atwood also asserts that Mr. Green was generally not cautious of his surroundings. To the extent such an argument seeks summary judgment on an affirmative defense of comparative fault, the Court finds there is a genuine issue of material fact and reserves this question for a jury.

### B. Prima Facie Negligence

Ordinances "can create obligations and duties that may impose duties additional to those required by common law." *Carter v. Entergy Ark., Inc.,* 2024 Ark. App. 573, at 10 (2024), *reh'g denied* (Jan. 15, 2025), *review denied* (Mar. 20, 2025) (citing *Restatement (Second) of Torts* § 343A cmt. d). And a plaintiff may use a defendant's "failure to comply" with a local "ordinance" as "prima facie evidence of negligence." *Id.* (first citing *Waddell v. Ferguson Home Builders, LLC*, 2017 Ark. App. 66, at 7; and then citing *Cent. Okla. Pipeline, Inc. v. Hawk Field Servs., LLC*, 2012 Ark. 157; and then citing *Bolstad v. Pergeson*, 305 Ark. 163 (1991)). Where a local ordinance incorporates an external standard, Arkansas courts have looked to the incorporated standard as setting the duty. *See id.* at 11 (looking to the National Electrical Safety Code standards that had been incorporated by reference into the ordinance).

Here, the local ordinance, Section 16-930, adopted the latest edition of the Arkansas Fire Prevention Code, based on the International Building Code ("IBC") and the International Fire Code ("IFC"), as well as the latest edition of the Life Safety Code ("LSC") of the National Fire Protection Association. (Doc. 51-1, p. 1). The Greens provide an affidavit from their expert, Jason T. English,[3] that explains the aisle-width requirements of

---

[3] On May 2, 2025, Atwood filed a *Daubert* Motion to Exclude Plaintiffs' Expert Witness Jason English and Brief in Support. (Docs. 54 & 55). The Court does not take up that argument here. While the Court generally sets the summary judgment and *Daubert* motion deadlines on the same date, in this case, the *Daubert* motion deadline was extended per Atwood's request. *See* Doc. 28. The Court, however, declined Atwood's request to extend the summary judgment deadline because multiple extensions had already been given, Atwood did not explain how the certain outstanding expert depositions would be used in support of a summary judgment motion, and an extension likely would have prevented the Court from ruling on summary judgment prior to the May settlement conference. *See* Docs. 37, 38, & 39. Moreover, the Court's determination whether Atwood had a duty based on an ordinance violation is not dispositive here

the IBC, IFC, and LSC. *See* Doc. 51-11. Atwood does not object that it is subject to the Ordinance's width-requirements, but it argues that such width-requirements did not apply to the area between the jerky wagon and pallet of shelving because it was not a means of egress and that it complied with the relevant codes because an aisle was provided on the other side of the jerky wagon. *See* Doc. 53, pp. 5–6.

The Greens argue that "because the space between the beef jerky wagon and the pallet of metal shelving was accessible to customers and offered products for sale, it was required to comply with the codes' aisle requirements," citing the affidavit from their expert, Mr. English. According to Mr. English—and accepted by Atwood in its Reply—the IBC, IFC, and LSC set forth certain width and accessibility requirements for "means of egress," required aisle accessways, and non-required aisle accessways. (Doc. 51-11, ¶¶ 4–7). Per Mr. English's affidavit, the IBC defines "means of egress" as "[a] continuous and unobstructed path of vertical and horizontal egress travel from any occupied portion of a building or structure to a public way." *Id.* at ¶ 5b. It generally prohibits obstructions from being "placed in the required width of a means of egress." *Id.* at ¶ 5c. Additionally aisles and aisle accessways have a minimum "clear width" of 30 inches, "measured perpendicular to the elements and the merchandise within the merchandise pad." *Id.* at ¶ 5f. An aisle accessway is required "on at least one side of each element within the merchandise pad," but other aisles and aisle accessways are allowed provided they comply with the 30-inch width requirement. *Id.* at ¶ 5f. Mr. English asserts in his affidavit that "[t]he empty space between the Iowa Smokehouse beef jerky wagon and the pallet

---

because the negligence claim would survive on the Court's finding that there is a genuine issue of material fact as to whether Atwood had a duty to Mr. Green as a business invitee.

10

of metal shelving was an aisle accessway . . . .," but "[i]nstead of the minimum 30-inch clearance, the clearance was likely only about 24 inches wide." *Id.* at ¶¶ 9–10.

Atwood argues that the space between the jerky wagon and pallet of shelves was not a means of egress because the path between the jerky wagon and shelving was blocked by pallets of dog food, and so the space "was not a continuous and unobstructed pathway, and as such was not subject to the aisle requirements." Doc. 53, pp. 5–6 (citing Doc. 40-5, pp. 8–10 (Kenny Shiplet, Depo.)); *see also* Doc. 51-7, p. 13 (Braylon Smith, Depo.). Atwood also argues that the set up complied with the relevant codes cited by Mr. English because the jerky wagon was accessible from two sides other than the one near the shelving. (Doc. 53, p. 6 (citing Doc. 40-9, p. 5 (John Smith, Depo))).

While Atwood's argument supports the notions that crossing *over the dog-food pallet* would not be a means of egress and that the space in question was a not a *required* aisle accessway, Atwood has not provided persuasive support for its argument that it had no duty to provide a clear path from the space between the jerky wagon and shelving back to a main aisle. And the Court is not persuaded on the current record that, as a matter of law, the space between the jerky wagon and the pallet of shelving was not subject to a width requirement.

### C. Loss of Consortium

Atwood argues that, along with Mr. Green's claim for negligence, Mrs. Green's claim for loss of consortium should be dismissed because it wholly derives from the negligence claim. Because the Court declines to dismiss Mr. Green's negligence claim on summary judgment, and because Atwood makes no other argument for dismissal of the loss-of-consortium claim, the claim survives summary judgment.

### D. Spoliation

Lastly, in their Response, the Greens ask the Court to deny Atwood's Motion for Summary Judgment as a sanction for alleged destruction of videos and documents in this case. (Doc. 51, pp. 21–24). Specifically, they assert that after receiving notice of a potential lawsuit and a request to preserve all relevant evidence, Atwood failed to suspend its routine records-retention policy resulting in the destruction of surveillance footage from twenty-two of its twenty-four security cameras and an unknown number of reports of daily safety walks. *Id.* at p. 22. Because the Court denies summary judgment on the finding that there are genuine issues of material fact, it does not decide whether to deny summary judgment on the spoliation argument.

## IV. CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that the Motion for Summary Judgment (Doc. 40) is **DENIED**.

**IT IS SO ORDERED** on this 9th day of May 2025.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE